■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DARREL R. MOORE, Appellant. [727 NYS2d 542] —Lahtinen, J. Appeal from a judgment of the County Court of Rensselaer County (McGrath, J.), rendered October 14, 1999, upon a verdict convicting defendant of the crime of burglary in the second degree.

In November 1998, Georgette Delaney discovered defendant in the kitchen of her second floor apartment. When Delaney confronted him, defendant stated that he was looking for the Mittnights, who resided on the first floor of the building, and he was supposed to clean their carpets. After complying with Delaney's direction to leave, defendant stopped on the first floor and spoke to Linda Mittnight. Delaney, however, observed that Mittnight did not know defendant and reinstructed him to leave the building, which he did. Delaney then went to Mittnight's apartment and the women contacted the police. Shortly thereafter, police officers arrived, obtained a physical description of defendant and took him into custody only a few blocks away from the apartment building. Although none of Delaney's property was in defendant's possession when he was apprehended, a kitchen knife was discovered on his person. Delaney and Mittnight were then transported to the scene of the arrest and positively identified defendant as the perpetrator.

Defendant was thereafter indicted for one count of burglary in the second degree* and, following a jury trial, he was convicted of that crime. He was subsequently sentenced as a

---

* The Columbia County District Attorney's office prosecuted this matter after the Rensselaer County District Attorney's office was disqualified because

persistent felony offender to an indeterminate term of imprisonment of 15 years to life. This appeal followed.

Defendant contends that the evidence is legally insufficient to sustain his burglary conviction because there is no proof that he intended to commit a crime when he unlawfully entered Delaney's apartment. We disagree because "when the evidence presented is viewed in the light most favorable to the prosecution" (*People v Tunstall*, 278 AD2d 585, 586, *lv denied* 96 NY2d 788), it is evident that "there is [a] valid line of reasoning and permissible inferences" (*People v Bleakley*, 69 NY2d 490, 495) from which "a rational trier of fact could have found the elements of [burglary in the second degree] proven beyond a reasonable doubt" (*People v Harper*, 75 NY2d 313, 316).

As relevant to this case, a person commits the crime of burglary in the second degree when he or she knowingly enters a dwelling with the intent to commit a crime therein (*see*, Penal Law § 140.25 [2]). Because the element of intent is subjective (*see, People v Mackey*, 49 NY2d 274, 279; *People v Wright*, 92 AD2d 722, 723), it may be inferred from, *inter alia*, the circumstances of the unlawful entry, defendant's unexplained presence on the premises and "defendant's actions and assertions when confronted by the police or the owner" (*People v Mitchell*, 254 AD2d 830, 831, *lv denied* 92 NY2d 984; *see, People v Lyng*, 154 AD2d 787, 789, *lv denied* 74 NY2d 950).

Here, defendant surreptitiously entered Delaney's second floor apartment through a back door (*cf., People v Miller*, 149 AD2d 737, *lv denied* 74 NY2d 849) and, when confronted by Delaney, he falsely stated that he was there to perform carpet cleaning services for the Mittnights (*cf., People v Mitchell*, 231 AD2d 937, 938), who did not know defendant and had no need for his "services" because there were no carpets in their apartment. Defendant's excuse for his presence in Delaney's second floor apartment was further undermined after he admitted knowing that the Mittnights lived "downstairs." Finally, defendant told the arresting police officers that he "didn't burglarise [*sic*] [Delaney] * * * I just went to visit her," an incredible claim given that Delaney did not know defendant, he entered her apartment without permission and he told her that he entered the apartment by mistake.

Based upon the circumstances of the unlawful entry and defendant's implausible and contradictory explanations for his unauthorized presence (*see, People v Tunstall*, 278 AD2d 585,

defendant's former counsel had accepted an employment position with that office.

586, *supra*; *People v Monge*, 248 AD2d 558, 559, *lv denied* 92 NY2d 856), which effectively eradicated any conceivable inference of innocent intent (*see*, *People v Johnson*, 115 AD2d 136, 137, *lv denied* 67 NY2d 762), we conclude that there was legally sufficient evidence from which the jury could reasonably infer that defendant unlawfully entered the victim's apartment with the intent to commit a crime therein (*see*, *People v Mitchell*, 254 AD2d 830, 831, *supra*) when the facts are viewed in the light most favorable to the People (*see*, *People v Kraft*, 278 AD2d 591). In addition, "upon viewing all of the evidence in a 'neutral light,' and weighing 'the relative probative value of the inferences that may be drawn from the testimony' " (*People v Tunstall*, *supra*, at 587, quoting *People v Jefferson*, 248 AD2d 815, 817, *lv denied* 92 NY2d 926), "but according due deference to the jury's 'opportunity to view the witnesses, hear the testimony and observe demeanor' " (*People v Kraft*, *supra*, at 592, quoting *People v Bleakley*, 69 NY2d 490, 495, *supra*), we conclude that the verdict is not against the weight of the evidence.

Defendant also argues that his sentence is harsh and excessive and should be reduced in the interest of justice. Notably, however, defendant does not challenge his adjudication as a persistent felony offender, for which a prison term of 15 years to life is the minimum period of incarceration authorized by law (*see*, Penal Law § 70.00 [2] [a]; [3] [a] [i]; § 70.10 [2]). In light of defendant's extensive criminal history, which includes at least two dozen arrests, 15 misdemeanor convictions, four prior felony convictions, three State prison sentences and two parole violations, County Court correctly concluded that defendant's "history and character * * * and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest" (Penal Law § 70.10 [2]; *see*, CPL 400.20 [1]). We therefore decline to disturb the sentence because it is "within the statutory parameters" and defendant has failed to identify any extraordinary circumstances warranting a modification (*People v Hart*, 266 AD2d 698, 701, *lv denied* 94 NY2d 880).

Finally, we have reviewed the arguments advanced in defendant's *pro se* supplemental brief and find them to be unavailing and unworthy of discussion.

Mercure, J. P., Peters, Carpinello and Mugglin, JJ., concur. Ordered that the judgment is affirmed.

